UNITED STATES, Appellee

v.

Eddie J. ROGERS, Technical Sergeant
U.S. Air Force, Appellant

No. 08-0518

Crim. App. No. 36768

United States Court of Appeals for the Armed Forces

Argued December 3, 2008

Decided January 22, 2009

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel

For Appellant:  Captain Lance J. Wood (argued); Major Shannon A.
Bennett (on brief); Lieutenant Colonel Mark R. Strickland.

For Appellee:  Captain G. Matt Osborn (argued); Colonel Gerald
R. Bruce and Captain Ryan N. Hoback (on brief); Major Donna
Rueppell.


Military Judge:  Donald Plude


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

A court-martial composed of members convicted Appellant, contrary to his pleas, of wrongfully using cocaine on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). The adjudged and approved sentence consisted of six months confinement, a bad conduct discharge, and reduction to E-4. The United States Air Force Court of Criminal Appeals affirmed after modifying the findings and reassessing the sentence. United States v. Rogers, No. ACM 36768, 2008 CCA LEXIS 64 at *9, 2008 WL 514227 at *3 (A.F. Ct. Crim. App. Feb. 27, 2008). We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN DENYING
> APPELLANT'S MOTION TO SUPPRESS HIS HAIR TEST RESULTS.

The question presented is whether probable cause existed to issue the search authorization. For the following reasons, we affirm.

FACTS

In his Findings and Conclusions re: Defense Motion to Suppress Seizure of Hair (Jan. 31, 2006) (Findings/Conclusions), the military judge made the following findings of fact, in relevant part:

> 2. On 28 Apr 05, a document turned up missing in the
> Command Support Section of the 29th Intelligence
> Squadron. . . . When SrA [T] called the accused later

that morning, he told her to come to his house because he wanted to talk to her.

3. SrA [T] arrived at the accused's off-base home around 1310 hours on 28 Apr. After discussing the missing document for a while, SrA [T] alleges the accused offered her cocaine, used cocaine himself, offered her money for sexual intercourse, grabbed her hand and rubbed it on his penis, and exposed his penis to her . . . .

4. Sometime after returning to her office, SrA [T] talked to SSgt McElvaine about what happened at the accused's house. . . .

5. . . . [O]n 28 Apr, SrA [T]'s first sergeant called Special Agent Brian McPherson and informed him of SrA [T]'s allegations against the accused, including the drug allegations. Agent McPherson interviewed SrA [T] the following morning [on 29 Apr]. Following that interview, SrA [T] prepared and signed under oath a 5-page statement regarding the events of 28 Apr 05. In the statement . . ., she stated she saw the accused snort three lines of white powder . . . . About five minutes after using the powder, she said the accused started sweating and talking more rapidly and became sexually aggressive toward her. She also told Agent McPherson the accused . . . informed her he got in trouble at his last base for drug use but got out of it . . . . SrA [T] also said the accused told her he wasn't worried about a urinalysis because he took a special drink to clean out his system.

6. Since SrA [T] was alleging she was the victim of an indecent assault, Agent McPherson treated her as a victim, consistent with OSI policy, rather than as an informant and accepted what she told him as true. . . . Based on everything he knew about the case, Agent McPherson believed SrA [T]'s account of what occurred at the accused's house was credible.

7. . . . Agent McPherson interviewed the accused under rights advisement on 2 May. The accused waived his rights and made a written statement in which he denied SrA [T]'s allegations. The accused also agreed to provide a urine sample for drug testing . . . . On

3

17 May 05, word was received that the accused's urine sample tested negative for cocaine.

8. . . . In discussing the matter with [Special] Agent [Jeremy] Gage[, OSI's Forensic Science Consultant], Agent McPherson told him everything he knew about the case. Agent Gage told him the chances of finding traces of cocaine in the accused's hair was likely if the accused was a chronic user and if he consumed a considerable amount of the drug. . . . Agent Gage advised [Agent] McPherson that he believed there was probable cause for doing a hair analysis.

9. On 13 Jun, Agent McPherson discussed whether there was probable cause for a hair analysis with Capt Sheila Stoffel, Staff Judge Advocate for the 70th Intelligence Wing. She opined there was. Thereafter, Agent McPherson prepared an affidavit to present to a military magistrate to obtain a search authorization for the hair analysis. This was the first time Agent McPherson had been involved in obtaining a search authorization. Consequently, he prepared the affidavit . . . with the assistance of the OSI detachment's OIC . . . . However, neither ran the finished affidavit by the legal office . . . .

10. Col Wayne McCoy, the 70th Operations Group commander, was the military magistrate who approved the search authorization at issue. Agent McPherson met with him on 20 Jun 05 and gave him the affidavit . . . after being sworn to it. The affidavit didn't include some important information that was then known by Agent McPherson. Specifically, it didn't note that a court-martial at Maxwell AFB had acquitted the accused in Apr 04 of using cocaine; nor did it mention that the accused gave a urine sample on 2 May 05 that later tested negative for cocaine and that he denied the allegations made by SrA [T]. However, Agent McPherson testified that he orally discussed all these matters with Col McCoy. Col McCoy testified that Agent McPherson orally summarized the affidavit and he asked the agent about the Maxwell urinalysis and some other questions, but he recalls few other specifics of what they discussed. Although the defense has sought to attack the credibility of Agent McPherson, the Court finds his testimony credible and finds that he

4

orally informed Col McCoy of the previously noted details that were missing from the affidavit.

11. . . . Col McCoy had a general knowledge of hair testing from some scientific reading he did on the subject in the late 1980s. Specifically, he knew that the military was pursuing other scientific means for testing for drugs and that hair and fingernails were believed to retain evidence of drug use for a much longer period of time than urine.

12. Although Col McCoy didn't have any information on the background or qualifications of Agent Gage, he was aware that OSI agents assigned as forensic science consultants are considered as experts on . . . DNA and hair testing. Consequently, he gave Agent Gage's opinion . . . a lot of weight.

13. At the end of the meeting with Agent McPherson on 20 Jun 05, Col McCoy signed a written authorization to take body hair from the accused for drug testing. On 21 Jun 05, . . . a technician . . . cut pieces of hair from under the accused's armpits. On 28 Jun 05, that hair was sent to a laboratory . . . for drug testing. Subsequent tests of the accused's hair indicated the presence of cocaine.

Appellant argues that probable cause did not exist because the affidavit was inadequate, Senior Airman (SrA) T's veracity went unchecked, and Colonel (Col) McCoy acted as a rubber stamp magistrate. In addition, at oral argument Appellant attacked the credibility of Agent McPherson by emphasizing Col McCoy's testimony that he believed that Agent McPherson held the rank of major because "[h]e told me he was a [m]ajor."[1] Based on this

---

[1] The exchange between defense counsel and Col McCoy proceeded as follows:

statement, Appellant argues that the affidavit as a whole is incredible and the military judge abused his discretion in finding that the totality of the circumstances supported probable cause.

ANALYSIS

A military judge reviews a magistrate's decision to issue a search authorization to determine whether the magistrate had a substantial basis for concluding that probable cause existed. United States v. Bethea, 61 M.J. 184, 187 (C.A.A.F. 2005). A magistrate has a substantial basis to issue a warrant when, based on the totality of the circumstances, a common-sense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found at the identified location. Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F.

---

[Defense Counsel]: Now when you met with Agent McPherson, what was your understanding of his position at the detachment?

[Col McCoy]: That he was the commander of the OSI detachment.

[Defense Counsel]: And what was your impression of his rank then?

[Col McCoy]: He's a Major. He told me he was a Major.

[Defense Counsel]: He did at the time he met with you?

[Col McCoy]: Yes.

2007). In light of the constitutional preference for warrants, substantial deference is afforded in cases where a magistrate determines that probable cause exists. Gates, 462 U.S. at 237.

We review a military judge's ruling on a motion to suppress for an abuse of discretion. United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995). An abuse of discretion exists if the military judge found clearly erroneous facts or misapprehended the law. Leedy, 65 M.J. at 213. Further, we review the facts in the light most favorable to the prevailing party below. Id.

On the one hand, the magistrate had access to a litany of facts that could support a finding of probable cause. First, there is the statement of SrA T, as reported in the affidavit. SrA T informed the Office of Special Investigations (OSI) that she witnessed Appellant engage in criminal conduct in his own residence. Among other things, SrA T stated, as quoted in the affidavit, that "[s]he witnessed [Appellant] inhale the 'lines' of 'powder' through his nose" and Appellant "also informed [SrA T that] he got in trouble for drug use at his last assignment but got out of it." Notably, the amount of cocaine in question was suggestive of frequent or binge use. As to SrA T's credibility, OSI viewed SrA T as both a witness and a victim; in such a case, OSI policy infers the truth of the allegations.

Further, there is evidence in the affidavit supporting the veracity and basis of knowledge of SrA T's statements. Bethea,

61 M.J. at 187.  SrA T was not an informant, but a witness, and therefore the Government carried no burden to demonstrate her reliability beyond that generally required of any witness. United States v. Martinelli, 454 F.3d 1300, 1307 (11th Cir. 2006); 2 Wayne R. LaFave, Search and Seizure § 3.4(a), at 225 (4th ed. 2004).  In any event, corroboration of SrA T's veracity exists.  For example, SrA T was aware of Appellant's 2004 court-martial charges and she described a scar on Appellant's stomach, neither of which were a matter of general knowledge within the squadron.[2]  SrA T's knowledge of these personal matters were corroborated before submission of the affidavit, tending to demonstrate SrA T's veracity.  Moreover, SrA T made these statements in person.  OSI agents therefore had the opportunity to evaluate her credibility firsthand.  The affidavit further supported the veracity of SrA T's statements by acknowledging

---

[2] Agent McPherson had the following exchange with trial counsel:

> [Agent McPherson]:  . . . [SrA T] was able to identify certain features about the accused.
>
> [Trial Counsel]:  Such as?
>
> [Agent McPherson]:  Such as -- such as him getting in trouble at Maxwell for a similar situation.  Such as, him having a scar on his stomach that he received from surgery.  When I spoke with the accused he -- when asked about distinguishing marks, features on his body, he said, "Yes I do have a scar on my stomach" that he obtained from surgery.

that she promptly reported the incident to her chain of command and that her statements remained consistent.

Second, Agent McPherson briefed Col McCoy for about twenty-five to thirty minutes, and although Col McCoy had a poor recollection of the details, he remembered discussing the case with Agent McPherson. Third, an OSI forensic science consultant confirmed that Appellant's hair would likely reveal traces of cocaine "if he is a chronic user, and if he consumed a considerable amount" of cocaine. Finally, the magistrate had personal knowledge of drug testing techniques and analysis from his time at Goodfellow Air Force Base.

On the other hand, circumstances exist in this case that could undercut a finding of probable cause. First, the affidavit presented to the magistrate did not include all potentially relevant facts. Specifically, the affidavit failed to include facts indicating that: Appellant was SrA T's supervisor; Appellant had previously disciplined SrA T; SrA T could have motive to lie; Appellant offered to take a urinalysis and this test came back negative; Appellant denied SrA T's allegations; and this was Agent McPherson's first affidavit. The affidavit also omitted any discussion of the science surrounding hair testing and that hair testing could be used to prove binge use. Second, the affidavit arguably did not

9

sufficiently link Appellant's alleged crime with the assertion that evidence of that crime would be found in Appellant's hair.

Based on the totality of circumstances, we conclude that the military judge did not abuse his discretion in upholding the search authorization in this case. To the extent this case presents a close call, we note that "'[c]lose calls [are to] be resolved in favor of sustaining the magistrate's decision.'" United States v. Monroe, 52 M.J. 326, 331 (C.A.A.F. 2000) (citation omitted). While the affidavit could have included the information identified above, the affidavit contained enough evidence to establish probable cause to seize Appellant's body hair. Most notably, the affidavit detailed SrA T's statements, as a victim and witness, regarding her encounter with Appellant at his home. Further, Agent McPherson briefed the magistrate on some, if not all, of the information omitted from the affidavit. In light of the record and uncertain recollections of the actors, the military judge did not erroneously conclude that Col McCoy knew about Appellant's previous acquittal in April 2004, that Appellant denied SrA T's allegations, and that Appellant's most recent urine sample had tested negative. Findings/Conclusions para. 10.

Moreover, based on the record as a whole, the military judge's conclusion that Agent McPherson did not "attempt . . . to knowingly or intentionally mislead the magistrate" is not

clearly erroneous.  Id. at para. 18.  At oral argument, Appellant drew attention to Col McCoy's testimony that "[Agent McPherson] told [Col McCoy] he was a Major."  If indeed Agent McPherson impersonated an officer, it would, among other things, undercut the credibility of his affidavit.  However, in our view, and the view of the military judge, the record is not as clear cut as Appellant argues.  First, SrA T's statements, as conveyed to multiple witnesses, are granular and credible, independent of what Agent McPherson did or did not say to Col McCoy about his military grade.  Second, the record as a whole reflects that Col McCoy and Agent McPherson had uncertain and differing recollections as to what was said during an initial introductory meeting and the June 20, 2005, session.  In fact, the defense counsel never asked Agent McPherson whether he recalled telling Col McCoy his pay grade, while the affidavit correctly identified Agent McPherson as a "Special Agent" in the Air Force OSI.  On this record, a military judge might well conclude that Col McCoy's testimony was the product of differing and failing recollections.  Moreover, the military judge, having observed the witnesses in this case, found that Agent McPherson was credible and this conclusion is not clearly erroneous.

Finally, a sufficient nexus existed between the alleged crime and the seizure of Appellant's hair.  Col McCoy relied on his "general knowledge of hair testing" and knew that "the

detection time of drugs in the body is somewhat limited."
Findings/Conclusions paras. 11, 18; see also Military Rule Of
Evidence (M.R.E.) 315(f)(2)(C) (a probable cause determination
can be based on "[s]uch information as may be known by the
authorizing official").  Col McCoy also considered the advice of
the OSI forensic science consultant who possessed knowledge of
hair analysis.  Findings/Conclusions para. 12.  As such,
sufficient facts existed "to support a reasonable belief that
testing [Appellant's] body hair would yield evidence of his use
of cocaine."  Id. at para. 19.

CONCLUSION

The military judge did not err in denying Appellant's
motion to suppress.  The decision of the United States Air Force
Court of Criminal Appeals is affirmed.