Judge OHLSON
delivered the opinion of the Court.
Pursuant to Appellant’s conditional pleas, a military judge sitting alone as a general court-martial convicted Appellant of four specifications of abusive sexual contact and one specification each of being absent without leave, violating a general order, making a false official statement, and making an indecent visual recording, in violation of Articles 86, 92, 107, 120, and 120c, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, 907, 920, 920c (2012). The military judge sentenced Appellant to a reduction to E-l, forfeiture of all pay and allowances, confinement for five yeai’s, and a bad-conduct discharge. In accordance with the pretrial agreement, the convening authority reduced the sentence of confinement to four years, but otherwise approved the adjudged sentence.
As provided for in the pretrial agreement, Appellant challenged on appeal the military judge’s denial of his motion to suppress evidence from his laptop computer. The United States Army Court of Criminal Appeals summarily affirmed the approved findings and sentence. We granted review on the following assigned issue:
Whether the military judge erred in denying Appellant’s motion to suppress the evidence seized from Appellant’s laptop computer.
United States v. Nieto, 75 M.J. 292 (C.A.A.F. 2016).
Upon review of this issue, we conclude that there was an insufficient particularized nexus linking Appellant’s misconduct to his laptop. Therefore, the military magistrate did not have a substantial basis for concluding that probable cause existed to seize the laptop. We further conclude that the inevitable discovery doctrine and the good-faith doctrine do not apply in this case. The military judge therefore abused his discretion in denying Appellant’s motion to suppress evidence. Accordingly, we reverse the decision of the United States Army Court of Criminal Appeals.
I. Background
In May of 2013, Corporal (CPL) RAO and another soldier provided sworn statements to the Army Criminal Investigation Division (CID). They averred that Appellant had used his cell phone to record them using the latrine at Forward Operating Base (FOB) Aziz-ullah, Afghanistan, without their consent. CPL RAO further stated that after Appellant had been identified as the person using the. cell phone, two non-commissioned officers “look[ed] through the subject’s cellular phone for any photographs or videos, which they did not find.” His statement did not reference Appellant’s laptop. Special Agent (SA) Sandefur, who had fifteen years of investigative experience, was in charge of the Kandahar Airfield CID office and initially supervised the investigation into these allegations.
In the course' of the investigation, SA Sandefur was told by his agents that “somebody” had previously seen a cell phone and laptop on Appellant’s bunk in his tent. SA Sandefur subsequently sought from a part-time military magistrate a search authorization to search Appellant’s bunk and to seize the cell phone and laptop. SA Sandefur testified that he did not “have any direct evidence” that images and videos were on the *104 laptop, did not know whether the files on the cell phone were transferable to the laptop, and did not know the memory storage capacity of the cell phone. He also did not know whether Appellant took photographs in the latrine, but “the investigation suggested” that Appellant had taken photographs that would have been “in a file format.” SA Sandefur supported the search authorization of the laptop with three sources of information: (1) CPL RAO’s sworn statement, cited above, that Appellant had used a cell phone in the latrine; (2) SA Sandefur’s own affidavit, cited below, which makes no mention of a laptop computer; and (3) SA Sandefur’s in-person meeting with the military magistrate, also cited below.
SA Sandefur’s affidavit in support of the search authorization stated, in .relevant part:
On 18 May 2013, this office was notified of an incident at FOB Azi Zullah [sic] that involved a male Soldier viewing other male Soldiers in bathroom stalls.
Preliminary investigation revealed that [Appellant] was using his Samsung telephone to view and possibly record other male Soldiers while they were on the toilet. Victims reported that they observed someone holding a cellular telephone over the wall of the bathroom stall while they were exposed and utilizing the toilet. [Appellant] was later identified by a Soldier as he was departing the latrine.
[[Image here]]
About 1300, 18 May 13, SA [JF], this office interviewed Cpl [RAO] ... who provided a sworn statement ... wherein he related on 12 May 13, he noticed a cellular telephone being held over the wall of his latrine, stall. He further related [to] his fellow Soldier SPC [CS] what happened. He indicated that he and SPC [CS] ... then waited outside the latrine stall as CPL [RAO] notified leadership. SPC [CS] identified [Appellant] exit the stall and reported him to leadership.
During the in-person meeting with the military magistrate to review the search authorization request, SA Sandefur informed the military magistrate about his:
knowledge in reference to Soldiers using their cell phones to photograph things, ,.. and that those phones are normally downloaded, the photos they take, if they’re taking scene photos or photos of their friends or whatever while they’re out on— on missions or on the FOB, they’ll back those up to their laptops so that when they get to the—a place where they can get Internet, they can post those or send those home to family or whatever.
SA Sandefur also briefed the military magistrate about “the preliminary information that [he] received from the agents on the ground at the FOB” about Appellant “using the cell phone underneath the stall to ... film or ... take pictures of individuals in the stall next to him.” He further informed the military magistrate about the type of cell phone Appellant owned (a “White Samsung Galaxy cellular Telephone”), but did not provide any details about any laptop that Appellant may have owned.
Relying on these three sources of information, on May 20, 2013, the military magistrate issued a search and seizure authorization to search Appellant’s bunk and seize any cell phone or laptop computer that was found there. Upon seizing the two items that same day, CID agents sent them to a CID digital forensic examiner. On June 4, 2013, CID agents interviewed Appellant and he confessed to recording soldiers who were using the latrine.[1]
Before conducting a search of the laptop and the cell phone, the forensic examiner requested that CID obtain an additional search authorization tailored to that purpose. This request prompted SA Dunn, who had become the primary case agent in June of 2013, to seek a search authorization from another part-time military magistrate at Kandahar Airfield in July 2013. In support of this July search authorization, SA Dunn relied on Cpl RAO’s sworn statement, as well as on an affidavit that mirrored SA Sande- *105 fur’s previous affidavit, except for the following additional paragraphs:
About 1024, 4 Jun 13, [Appellant] admitted to using his cellular telephone to view and record Soldiers utilizing the latrine while at FOB Azi Zullah [sic], Afghanistan. [Appellant] admitted to masturbating to the images on his cellular telephone of Soldiers utilizing the latrine.
It is my [i.e., SA Dunn’s,] experience as a CID Special Agent that persons who would use a portable digital media recorder would also transfer the media from a portable device to a computer station or storage device. Persons who view and record sexual acts often times store and catalog their images and videos on larger storage devices such as a computer or hard drive.
On July 17, 2013, the military magistrate authorized the search of the laptop and cell phone. The CID forensic examiner’s search of the cell phone “revealed nothing relevant to [CID’s] investigation.” However, the laptop contained a number of incriminating vid’eos and pictures, which ultimately led to additional criminal charges.
During the court-martial proceedings, Appellant moved to suppress evidence obtained from the laptop. He asserted that the facts presented to the military magistrates “were insufficient to support a finding of probable cause.” The military judge denied the motion on the basis that the military magistrates “were provided with a substantial basis for determining the existence of probable cause as to images being found on the accused’s laptop.” The military judge cited the following points:
The normal inference to be drawn from the accused placing a cell phone over a latrine stall ... is that the accused was recording images....
It is also a normal inference to be drawn—as was done in [United States v. Clayton, 68 M.J. 419 (C.A.A.F. 2010) ]— that data is transferred from one digital device to another. Both SA Sandefur and
SA Dunn told [the military magistrates] as much.
This ruling is at issue in this appeal.
II. Applicable Legal Principles
We review a military judge’s denial of a motion to suppress for an abuse of discretion. United States v. Hoffmann, 76 M.J. 120, 124 (C.A.A.F. 2016). Accordingly, when reviewing a military magistrate’s issuance of a search authorization, we “do not review [the military magistrate’s] probable cause determination de novo.” Id. at 125. Instead, we examine whether a military “magistrate had a substantial basis for concluding that probable cause existed.” United States v. Rogers, 67 M.J. 162, 164-66 (C.A.A.F. 2009). A substantial basis exists “when, based on the totality of the circumstances, a common-sense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found at the identified location.” Id. at 165 (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 627 (1983); United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F. 2007)). We give “great deference” to the magistrate’s probable cause determination because of “the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant,” Gates, 462 U.S. at 236, 103 S.Ct. 2317 (citation omitted) (internal quotation marks omitted). However, this deference is “not boundless,” and a reviewing court may conclude that “the magistrate’s probable-cause determination reflected an improper analysis of the totality of the circumstances.” United States v. Leon, 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, if a military magistrate has “a substantial basis to find probable cause, a military judge [does] not abuse his discretion in denying a motion to suppress.” Leedy, 65 M. J. at 213.
The Fourth Amendment is predicated on “[t]he right of the people to be secure in their persons, houses, papers, and effects.” U.S. Const, amend. IV. It safeguards against “unreasonable searches and seizures” and requires warrants to be supported by probable cause. Id. The military *106 has implemented the Fourth Amendment through the Military Rules of Evidence (M.R.E.) 311-17. Hoffmann, 75 M.J. at 123. These rules reflect “the limits which military society, speaking through its Commander-in-Chief, is willing to” place upon the protections afforded under the Fourth Amendment in a military context. See United States v. McCarthy, 38 M.J. 398, 402 (C.M.A. 1993); see also United States v. Taylor, 41 M.J. 168, 171 (C.M.A. 1994). This Court is ordinarily bound by the Military Rules of Evidence. See Taylor, 41 M.J. at 171.[2]
The Military Rules of Evidence provide that when a seizure is made pursuant to a search authorization, the search authorization “must be based upon probable cause.” M.R.E. 315(f)(1); M.R.E. 316(c)(5)(A); see also United States v. Hester, 47 M.J. 461, 463 (C.A.A.F. 1998). Probable cause to seize exists if there is “a reasonable belief that the property or evidence is ... evidence of crime.” M.R.E. 316(c)(1); cf. M.R.E. 315(f)(2). “[P]robable' cause determinations are inherently contextual, dependent upon the specific circumstances presented as well as on the evidence itself,” and “probable cause is founded ... upon the overall effect or weight of all factors presented to the magistrate.” Leedy, 65 M.J. at 213; see also Gates, 462 U.S. at 232, 103 S.Ct. 2317 (observing that “probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts”). Stated differently, in order for there to be probable cause, a sufficient nexus must be shown to exist between the alleged crime and the specific item to be seized. See Rogers, 67 M.J. at 166; United States v. Gallo, 55 M.J. 418, 421 (C.A.A.F. 2001) (stating that probable cause “definition encompasses showing a nexus"). “The question of nexus focuses on whether there was a ‘fair probability’ that contraband or evidence of a crime will be found in a particular place.” Clayton, 68 M.J. at 424 (quoting Leedy, 65 M.J. at 213). A nexus may “be inferred from the facts and circumstances of a particular case,” including the type of crime, the nature of the items sought, and reasonable inferences about where evidence is likely to be kept. Id.; Gallo, 55 M.J. at 421.
A law enforcement officer’s professional experience may be useful in establishing such a nexus. See Leedy, 65 M.J. at 215-16; see also United States v. Soto, 799 F.3d 68, 85 (1st Cir. 2015). However, a law enforcement officer’s generalized profile about how people normally act in certain circumstances does not, standing alone, provide a substantial basis to find probable cause to search and seize an item, in a particular ease; there must be some additional showing that the accused fit that profile or that the accused engaged in such conduct. See United States v. Macomber, 67 M. J. 214, 220 (C.A.A.F. 2009). “[W]hile courts have relied on such profiles to inform search determinations, ... a [law enforcement officer’s] profile alone without specific nexus to the person concerned cannot provide the sort of articulable facts necessary to find probable cause to search” or seize. Id.
If a military magistrate did not have a substantial basis to find probable cause in a specific case, this Court ordinarily applies the exclusionary rule. Hoffmann, 75 M.J. at 124 (citing M.R.E. 311(a)). However, there are exceptions to this rule, including the inevitable discovery doctrine and the good-faith doctrine. See M.R.E. 311(c)(2), (3).
For the inevitable discovery doctrine to apply, the Government must establish:
by a preponderance of the evidence, “that when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence and that the evidence would inevitably have been discovered in a lawful manner had not the illegality occurred.”
*107 Hoffmann, 75 M.J. at 125 (quoting United States v. Dease, 71 M.J. 116, 122 (C.A.A.F. 2012)); see also M.R.E. 311(c)(2).
For the good-faith doctrine to apply, the Government must establish that law enforcement’s reliance on a defective authorization is objectively reasonable. Hoffmann, 75 M.J. at 127. In the military, the good-faith doctrine applies if: (1) the seizure resulted from a search and seizure authorization issued, in relevant part, by a military magistrate; (2) the military magistrate had a substantial basis for determining probable cause existed; and (3) law enforcement reasonably and in good faith relied on the authorization. M.R.E. 311(e)(3); see also United States v. Carter, 54 M.J. 414, 420 (C.A.A.F. 2001).
III. Discussion
We conclude that the military judge abused his discretion in denying Appellant’s motion to suppress evidence from the laptop. We reach this conclusion because (1) the military magistrate had no substantial basis for finding probable cause even after according the military magistrate great deference, and (2) neither the good-faith doctrine nor the inevitable discovery doctrine applies. We discuss each conclusion below.
A. Probable Cause
Turning our attention to the military magistrate’s probable cause determination, we first note the United States Supreme Court’s observation that cell phones, such as the one possessed by Appellant, are “in fact minicomputers” that have “immense storage capacity” allowing them to store “thousands of pictures, or hundreds of videos.” Riley v. California, — U.S. -, 134 S.Ct. 2473, 2489, 189 L.Ed.2d 430 (2014). Indeed, Appellant’s cell phone, by itself, had the ability to serve both as the instrumentality of the crime and as a storage device for the fruit of that crime. Therefore, in this age of “smart phones,” SA Sandefur’s generalized profile about how servicemembers “normally” store images was technologically outdated and was of little value in making a probable cause determination.
We further note that the affidavits accompanying the search authorization did not reference a laptop or data transfers from Appellant’s cell phone. Accordingly, we conclude that SA Sandefur’s generalized profile was not based on a firm factual foundation. As a result, the information provided by SA Sandefur to the magistrate did not independently establish a particularized nexus between (a) the crime the accused was alleged to have committed with his cell phone in the latrine and (b) the laptop that was previously seen by “somebody” on Appellant’s bunk. In order to identify a substantial basis for concluding that probable cause existed to believe that Appellant’s laptop was linked to the crime, we conclude that—at a minimum— there needed to be some additional showing, such as the fact that Appellant actually downloaded images (illicit or otherwise) from his cell phone to his laptop, stored images on his laptop, or transmitted images from his laptop. And yet, there was no such showing in this case.[3] Therefore, SA Sandefur’s affidavit, his generalized profile, and CPL RAO’s affidavit provided no basis, substantial or otherwise, for the military magistrate to conclude that probable cause existed to seize the laptop. See Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (requiring “a nexus ... between the item to be seized and criminal behavior”).
SA Sandefur’s oral discussion with the military magistrate also failed to adequately support the search authorization. See M.R.E. 315(f)(2)(B) (noting that probable cause determination can be based on oral statements). Except for the generalized profile *108 discussed and discredited above, the military magistrate was not provided with substantive oral information linking Appellant’s misconduct to the laptop. This point is underscored by the fact that SA Sandefur testified that he did not have “any direct evidence” that images were on the laptop and did not know whether the files on the cell phone were transferable to the' laptop, and by the fact that SA Sandefur made no proffer to the military magistrate that anyone had ever seen Appellant download material from his cell phone to a laptop. In fact, even Appellant’s ownership of the laptop in question was predicated on suspect information and credited to an unknown source.[4] Cf. Hoffmann, 75 M.J. at 125 (noting that probable cause determination considers veracity and basis of knowledge of those supplying hearsay information). Moreover, the military magistrate could not draw any reasonable inferences linking the crime and the laptop based on the limited information and generalized profile offered by SA Sandefur. Therefore, we hold that the military magistrate did not have a substantial basis for concluding that probable cause existed to seize Appellant’s laptop.[5]
B. Good-Faith and Inevitable Discovery Doctrines
The Government argues that, even if the military magistrate did not have a substantial basis for concluding that probable cause existed to seize Appellant’s laptop, the evidence from the laptop was admissible under the good-faith doctrine as well as under the inevitable discovery doctrine. In order to prevail, the Government has the burden of establishing both doctrines by a preponderance of the evidence. See M.R.E. 311(d)(6)(A). We conclude that the Government has not met its burden of establishing the good-faith doctrine. See M.R.E. 311(c)(3).[6]
The Government also has failed to establish the applicability of the inevitable discovery doctrine. In reaching this conclusion, we note that the Government has failed to identify any evidence that law enforcement possessed, or was actively pursuing at the time of the seizure, that would have made the lawful discovery of the laptop evidence inevitable. See Hoffmann, 75 M.J. at 125-26. We will not rely on “speculation and conjecture” to make this conclusion. See United States v. Maxwell, 45 M.J. 406, 422 (C.A.A.F. 1996). Therefore, the Government has not established the applicability of the inevitable discovery doctrine.
IV. Conclusion
We hold that the military magistrate did not have a substantial basis to determine that probable cause existed to seize Appellant’s laptop and that the inevitable discovery and good-faith exceptions do not apply in this case. Because the seizure of the laptop was unlawful, the subsequent search is likewise unlawful. See Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Conklin, 63 M.J. 333, 334 (C.A.A.F. 2006); see also M.R.E. 311(a). The military judge therefore abused his discretion in denying Appellant’s motion to suppress evidence from the laptop.
*109 V. Decision
The decision of the United States Amy Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Amy for proceedings consistent with this opinion.

, This was Appellant's second interview with CID. In the first, he falsely denied holding his phone over the top of a bathroom stall.

. We note that in the instant case the Government has not argued that we should apply the Military Rules of Evidence in a different manner because this incident took place at a forward operating base. Therefore, we do not address whether, due to any combat exigencies, the rules governing searches and seizures might apply differently here, nor do we address whether the military magistrate's probable cause determination might be due additional deference under the attendant circumstances.

. In reaching this conclusion, we are not creating a heightened standard for probable cause or requiring direct evidence to establish a nexus in cases where technology plays a key role. Rather, the traditional standard that a nexus may "be inferred from the facts and circumstances of a particular case," Clayton, 68 M.J. at 424, still holds in cases involving technological devices such as cell phones and laptops. We merely con-elude that in the instant case there is an insufficient nexus between Appellant’s cell phone and his laptop that can be inferred based on the particular facts presented to the military magistrate. We have provided some non-exhaustive examples as to how a sufficient nexus might be inferred in order to demonstrate that this burden on the Government is far from onerous.

. CID only knew that a laptop was on Appellant’s "bunk in his tent.” When pressed on this specific point, SA Sandefur could not explain how CID learned of the laptop.

, In reaching this conclusion, we are mindful that a contrary holding could be construed as providing law enforcement with broad authority to search and seize all of an accused's electronic devices and electronic media merely because the accused used a cell phone in furtherance of a crime. This result, based on generalized profiles created by law enforcement and on the generalized observation about "the ease with which [digital] media may he replicated on” a multitude and array of electronic devices, would run counter to the principle that law enforcement officials must provide specific and particular information in order for a magistrate to determine that there is "a fair probability that contraband or evidence of a crime will be found in a particular place.” See Clayton, 68 M.J. at 424 (citation omitted) (internal quotation marks omitted); see also M.R.E. 316(c)(1); United States v. Brown, 828 F.3d 375, 382 (6th Cir. 2016).

.We recognize the tension between our discussion of the good-faith doctrine in Hoffmann, 75 M.J. at 127-28, and Carter, 54 M.J. at 419-22. We leave for another day resolution of tills tension because we conclude that under either understanding of the good-faith doctrine the Government has not met its burden of establishing this exception to the exclusionary rule in Appellant's case,