# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39473**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Hunter W. HACKWORTH**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 September 2019

————————————

*Military Judge:* Bradley A. Morris.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, and forfeiture of all pay and allowances. Sentence adjudged 2 February 2018 by GCM convened at Minot Air Force Base, North Dakota.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, MINK, and D. JOHNSON, *Appellate Military Judges.*

Chief Judge MAYBERRY delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MAYBERRY, Chief Judge:

Appellant was convicted, in accordance with his pleas, of one charge and two specifications of larceny (shoplifting at an off-base store and shoplifting at

the Minot Base Exchange (BX)), in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921.[1] With regard to the BX shoplifting offense, Appellant was charged with stealing 25 items, but only pleaded guilty to stealing five items. The Government litigated the remaining items charged, and a panel of officer members found Appellant guilty of stealing 20 items. The members sentenced Appellant to a bad-conduct discharge, confinement for four months, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence, but reduced the forfeitures upon completion of confinement to $1,092.00 a month for one month.

Appellant asserts one assignment of error (AOE) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): the military judge abused his discretion by denying the defense motion to suppress the unlawful search and seizure of Appellant's home.[2] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was a 20-year-old first-term Airman serving as a missile security forces (SF) squadron member. In June of 2017 Appellant married, bought a new car, and moved into base housing. On 7 July 2017, Appellant was caught shoplifting at an off-base store. Appellant was observed on security video taking nine items of women's clothing, placing them in his backpack, and then departing the store without paying for any of the items. He was arrested and ultimately released to his First Sergeant. On 10 July 2017, the loss prevention manager of the Minot BX, Mr. KS, learned that an empty Xbox container was found in the store over the weekend. Mr. KS reviewed video surveillance and found footage from 7 July 2017 of an individual taking an Xbox from the Power Zone section of the store to the Outdoor Living section, removing it from the

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant's assignment of error is captioned as "[w]hether the military judge abused his discretion by denying the defense motion to suppress the unlawful search and seizure of Appellant's *phone*." (Emphasis added). The brief filed in support of the alleged error addresses the activities associated with multiple searches of Appellant's *home*. Appellant's trial defense counsel filed a motion to suppress evidence obtained from the searches of the home as well as confessions made by Appellant after those searches. While Appellant's phone was searched, nothing of evidentiary value was found on the phone, and trial defense counsel never challenged this search. The search of the phone only provided evidence of the sale of an Xbox Appellant pleaded guilty to stealing and selling to another Airman. The opinion will only address the searches of Appellant's home.

packaging, placing the Xbox in a backpack, and leaving the store without pay-ing. Mr. KS provided the video to SF personnel, who created a still-image and distributed the image to the First Sergeants on Minot AFB. Within 10 minutes, Appellant was identified as the individual in the video.

Appellant was brought in for questioning by SF Detective DK on 12 July 2017. Appellant initially denied taking anything, but after seeing the video, admitted stealing the Xbox on 7 July 2017 and selling it to Airman First Class (A1C) DM using Facebook Marketplace. Appellant and A1C DM exchanged messages using their cell phones to finalize the sale price and final arrange-ments. The sale took place in the garage of Appellant's on-base house. Appel-lant also admitted having previously stolen another Xbox sometime between 30 June 2017 and 4 July 2017, but denied taking any other items from the BX. Appellant told Detective DK that he still had that Xbox in the trunk of his car and that the $160 in cash he received from the sale of the other Xbox was in the glove compartment of his car. Appellant consented to a search of the trunk and glove compartment. Both the Xbox, still in its box, and the cash were seized.

Over the ensuing weeks, Mr. KS continued to review video surveillance tapes and observed Appellant on a video from 5 July 2017 take an Apple iPod Touch and a Mophie phone accessory, place both in his backpack, and leave the store without paying. A video from 6 July 2017 showed Appellant take a Nin-tendo 3DS game system, place it in his backpack, and leave the store without paying. Mr. KS alerted the Game Stop store located just outside the BX of the missing Nintendo system since they too sold that system and asked them to watch for someone looking to return or trade it. It was later determined that on 6 July 2017, Appellant had traded the Nintendo system he took from the BX at the Game Stop, after first removing the exterior serial number. A Game Stop employee notified Mr. KS that they had the device. On 26 July 2017, Mr. KS again contacted Detective DK, informing him of the videos, Appellant's sale of the Nintendo to Game Stop, as well as the fact that empty packaging for other electronic items continued to be found in the store.

Armed with this information, Detective DK sought authorization to search Appellant's house for the missing BX items. The Minot legal office did not ini-tially believe there was probable cause to search the house based on the mere fact that Appellant stole items from the BX. However, after Detective DK re-called the fact that the earlier sale of the stolen Xbox had occurred in Appel-lant's garage, the legal office determined there was a sufficient nexus between the thefts and Appellant's home to establish probable cause for a search au-thorization for the house. Detective DK, the legal office, and the military mag-istrate, Colonel (Col) AR, took part in a conference call to discuss Detective

DK's request for a search authorization. Detective DK read his already pre-pared affidavit to Col AR, which stated in pertinent part:

> On 26 July 2017, at 0912 hours, myself and Inv [DG] 5 SFS/S2I received video surveillance from the Minot AFB Main Exchange showing [Appellant], 891 MSFS removing an IPod and Mophie phone accessory from the display, taking the items to the linen aisle of the Main Exchange, removing the merchandise from its packaging and departing the Main Exchange without rendering payment for these items. Additionally, the Minot AFB Main Exchange Loss Prevention Manager, [KS], stated packaging of a Fitbit Surge, Pebble Smart Watch, SMSG Gear S3 Classic, Three (3) IPod Touches, IPod Nano, Two (2) Mophie phone cases were found in the same area of the store. Based on my training and experience along with the video surveillance, [KS's] statements and the fact that [Appellant] previously admitted to [SF] during a subject interview to removing two Xboxes from the [BX] without rendering payment and selling one of these Xboxes from his on base residence, it is my belief that a search of [Appellant's] on base residence will reveal further violations of Article 121, UCMJ. Contact was made with [GM] (JAG at Minot) who related in his opinion, there was sufficient evidence to request authority to search [Appellant's] on base residence and seize any property stolen from the Main Exchange.

Detective DK did not inform Col AR that the thefts depicted on the surveillance videos had occurred earlier in the month. Col AR concurred that there was probable cause to search the house, and asked if this involved the same person she had barred from the BX a few weeks back and Detective DK confirmed that it was. Security forces searched Appellant's home on 26 July 2017 and recovered eight items.[3] Appellant's wife was present during the search, and Detective DK testified that she indicated that a drawer in the kitchen contained items "that Appellant had sold using his phone." On 27 July 2017, Appellant was again interviewed by SF personnel. He did not invoke his right to counsel but did not provide a statement. Appellant did give consent to search his car, where two Garmin Vivosmart HR activity monitors were found and seized. All of the items found in Appellant's house and his vehicle matched empty packaging found in the Minot BX.

---

[3] The items included a Samsung Gear 3 Classic watch; two Fitbit Surges; a Pebble Steel watch; an iPod Touch; two Mophie Juice Pak Air; and a Mophie Wireless Charging Base.

On 6 September 2017, Mr. KS again contacted Detective DK to inform him that an empty box for a JBL Flip 4 Bluetooth speaker was found when shelves in the Sporting Goods department were being reset. Detective DK reviewed the photos taken during the 26 July 2017 search of Appellant's house and identified a speaker that appeared to match the empty box. The next day, SF again brought Appellant in for an interview, where he consented to a search of his house, and provided specific locations in the house (to include an unused garbage can in the garage) where items would be found. During the ensuing search, nine items were found and seized.[4] SF could not locate two additional items Appellant identified as being present in the house, however he personally brought them in the next day.[5] In total, 22 items identified as coming from the BX were located and seized from Appellant's house or car, one was found at Game Stop and one was recovered from the Airman who purchased it from Appellant.

At trial, the Defense, claiming that the 26 July 2017 search and seizure was unlawful, filed a motion to suppress evidence obtained from the 26 July 2017 search as well as any and all derivative evidence subsequently obtained. The basis for the challenge was that the military magistrate lacked sufficient information to establish probable cause, and that information Detective DK provided the magistrate was materially false and made with a reckless disregard for the truth. Defense counsel alleged that the Appellant's subsequent confessions and consents to search were the result of this unlawful search and should be suppressed. The Government filed a written response opposing the motion. On 29 January 2018 the parties presented evidence and argument on the motion. The military judge denied the motion and provided a written ruling. Appellant subsequently pleaded guilty to the larceny of items from the off-base store and to five items from the Minot BX—all of which were supported by surveillance video evidence or evidence obtained prior to the challenged 26 July 2017 search of Appellant's house.

## II. DISCUSSION

### A. Law

Appellate courts "review a military judge's [denial of] a motion to suppress . . . for an abuse of discretion." *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016). When reviewing a military magistrate's issuance of a search authorization, we do not review the probable cause determination de novo. *Id.*

---

[4] The items included a Samsung Gear 3 Classic watch; two Apple iPod Nano; four Apple iPod Touch; a Fitbit Blaze; and a JBL Flip 4 Bluetooth speaker.

[5] An Apple iPod Touch and one Beats X headphones.

at 125. An abuse of discretion occurs when the military judge's findings of fact are clearly erroneous or he misapprehends the law. *See United States v. Clayton*, 68 M.J. 419, 423 (C.A.A.F. 2010) (citations omitted). In doing so, we examine whether a military "magistrate had a substantial basis for concluding that probable cause existed." *United States v. Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017) (quoting *United States v. Rogers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009)). A substantial basis exists when, under the totality of the circumstances, "there is a fair probability that evidence of a crime will be found at the identified location." *Rogers*, 67 M.J. at 165 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)).

The Fourth Amendment[6] protects individuals from unreasonable governmental intrusion into an individual's reasonable expectation of privacy. This protection against unreasonable searches and seizures applies to military members. *United States v. Ezell*, 6 M.J. 307 (C.M.A. 1979). The Supreme Court in *Riley v. California* reiterated that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" 573 U.S. 373, 381 (2014). Searches conducted pursuant to a warrant [are] presumptively reasonable whereas warrantless searches are presumptively unreasonable unless they fall within 'a few specifically established and well-delineated exceptions.'" *U.S. v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2013) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

Great deference is given to the magistrate's probable cause determination due to the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. *Gates*, 462 U.S. at 236. However, as the Supreme Court held in *United States v. Leon*, 468 U.S. 897, 914 (1984), the deference is "not boundless." If the military magistrate did not have a substantial basis for concluding that probable cause existed, "the Government has the burden of establishing both [the good faith and inevitable discovery] doctrines by a preponderance of the evidence." *Nieto*, 76 M.J. at 108.

Mil. R. Evid. 315(f) provides that "[a] search authorization issued under this rule must be based upon probable cause," which "exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." Mil. R. Evid. 315(e)(2) provides, "[t]he execution of a search warrant affects admissibility only insofar as exclusion of evidence is required by the Constitution of the United States or an applicable federal statute."

The good-faith exception to the exclusionary rule applies if: "(1) the seizure resulted from a search and seizure authorization issued, in relevant part, by a

---

[6] U.S. CONST. amend. IV.

military magistrate; (2) the military magistrate had a substantial basis for determining probable cause existed; and (3) law enforcement reasonably and in good faith relied on the authorization." *Nieto*, 76 M.J. at 107 (citations omitted).

In *Leon*, the Supreme Court listed four circumstances where the "good faith" exception would not apply: (1) where the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false;" (2) where the magistrate "wholly abandoned his judicial role;" (3) where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where the warrant is so "facially deficient . . . in failing to particularize the place to be searched or the things to be seized . . . that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

In the military, the good faith exception is enumerated in Mil. R. Evid. 311(c)(3), which provides:

> Evidence that was obtained as a result of an unlawful search or seizure may be used if:
>
> (A) The search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;
>
> (B) The individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and
>
> (C) The officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith shall be determined on an objective standard.

## B. Military Judge's Ruling

The military judge correctly stated that the Defense was responsible for proving by a preponderance of the evidence that a government agent knowingly and intelligently or with reckless disregard for the truth included a false statement in the information provided to the military magistrate. The military judge also correctly noted that if the Defense met the burden, the Government had the burden of proving by a preponderance of the evidence, that with the false information set aside, the remaining information provided to the military magistrate was sufficient to establish probable cause.

The military judge applied the Fourth Amendment, *Leedy,* and *Clayton,* and found the "magistrate did have a substantial basis for concluding that a search of [Appellant's] on-base residence would uncover evidence of wrongdoing." The military judge specifically acknowledged the testimony of Col AR that "had she been aware that the newly discovered [video] evidence was approximately 21 days old" at the time of the search authorization request, she would have still found probable cause and authorized the search of the house. The military judge stated the passage of time was only one of the many circumstances that must be weighed under the totality of the circumstances and his rationale for concluding there was probable cause was based on his assessment that the evidence showed:

> (1) this was a continuing course of conduct (and not an isolated incident), as shown by the prior on-base and off-base incidents two weeks earlier, (2) that a large number of items were missing from the BX and their empty packaging was all found in the same general area of the BX (matching the [Appellant's] unique MO), (3) that one of the earlier items stolen was sold from out of the garage of his on-base residence, (4) his vehicle had been searched during the Xbox incident and no additional items were found, and (5) that because of the prior instances the [Appellant] would now have had a harder time getting rid of stolen merchandise once "under the microscope" by law enforcement and his unit. . . .

The military judge went on to hold that even if the search was not supported by probable cause, the good faith exception to the exclusionary rule would make the seized evidence admissible. The military judge based his ruling on his assessment that the detectives did not act outside the scope of the search authorization, and the items seized were encompassed by the description in the search authorization. The military judge did not find the case involved a false or reckless affidavit, a situation where the magistrate abandoned their judicial role, a facially deficient affidavit or a facially deficient warrant. Lastly, the military judge expressly found that Detective DK's affidavit stating the initial Xbox sale occurred "from [Appellant's] on-base residence" did not misrepresent a material fact, either intentionally or with reckless disregard for the truth. Appellant sold the Xbox to A1C DM from his garage which was attached to his on-base house.

## C. Analysis

The Government asserts that Appellant waived his right to challenge the search by his unconditional plea. However, Appellant only pleaded guilty to the larceny from the off-base store and to five items from the Minot BX—all of which were supported by surveillance video evidence or evidence obtained

prior to the challenged 26 July 2017 search of Appellant's house. This is not a case involving waiver.

Having determined that this issue is properly before us, we find that the military judge did not err in denying the motion to suppress. There was probable cause to authorize the search of Appellant's home on 26 July 2017. Mr. KS started working as the loss prevention monitor at the Minot BX on 19 June 2017. The position had been vacant for almost six months. Because the historical surveillance system at the time was an analog system, Mr. KS had to view individual segments of video from as many as 64 cameras to follow a particular individual move throughout the store. After successfully locating video surveillance of the 7 July Xbox theft on 12 July 2017, Mr. KS diligently reviewed additional video footage from the preceding days. After watching hours and hours of video, he found the videos of Appellant stealing items on 5 and 6 July 2017. He notified SF on 26 July 2017, the same day he completed his review of the video surveillance.

When Detective DK sought the search authorization on 26 July 2017, he was acting on information provided to him that same day. The military magistrate was already aware of the BX theft involving Appellant on 7 July 2017, for which she barred him from the BX, and the off-base theft incident. When she learned that other video surveillance showed him stealing additional items from the BX, that additional empty packaging for a variety of electronic items had been found in the store, and that Appellant had sold one of the stolen items from his house, the military magistrate found probable cause to search his home for additional merchandise missing from the BX. While trial defense counsel zealously challenged the fact that the "new" videos actually predated the earlier theft, the military magistrate was firm in her position—Appellant's recent history of theft from two different locations (on the same day) and the existence of video evidence of additional thefts left her convinced it was likely the merchandise would be in his home or his vehicle.

We, like the military judge, find the search authorization on 26 July 2017 was supported by probable cause and the evidence was admissible. The military judge's findings of fact were not clearly erroneous, nor did he misapply the law. A substantial basis existed that there was a fair probability that evidence of the BX thefts would be found in Appellant's home. Many of the items found during the September 2017 search had been stolen much earlier, but had not been discovered in prior searches because Appellant had concealed them. The derivative evidence including Appellant's confessions after the 26 July 2017 search, his consent search for his vehicle and the additional search of his home in September 2017 were also admissible. Finally, like the military judge, we

find that even if there was no probable cause, the evidence was admissible pursuant to the good faith exception standard delineated in *Leon* and the enumerated standard found in Mil. R. Evid. 311(c)(3).

## III. CONCLUSION

The findings and sentence are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court