*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Jaelen M. JOHNSON, Senior Airman
United States Air Force, Appellant

**No. 25-0202**
Crim. App. No. 40537

Argued January 14, 2026—Decided May 26, 2026

Military Judge: Lance R. Smith

For Appellant: *Captain Joshua L. Lopes* (argued); *Captain Michael J. Bruzik* (on brief); *Megan P. Marinos*, Esq.

For Appellee: *Major Regina Henenlotter* (argued); *Colonel Matthew Talcott* and *Mary Ellen Payne*, Esq. (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, and Judge HARDY joined. Chief Judge OHLSON filed a separate dissenting opinion.

————————

Judge JOHNSON delivered the opinion of the Court.

## Introduction

Appellant entered DF's private room and touched and photographed him while he slept. Law enforcement recovered two iPhones belonging to Appellant at the crime scene. Law enforcement sought several search authorizations, the second of which is relevant here. Later, the iPhones were searched, and incriminating evidence was found on an iPhone 13. Before trial, the defense moved to suppress all evidence obtained from the search of the iPhones, but the military judge denied the motion.

A general court-martial convicted Appellant, contrary to his pleas, of one charge and specification of assault, one charge and specification of unlawful entry (a lesser included offense of burglary), and one charge and specification of indecent visual recording, in violation of Articles 128, 129, and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 929, 920c (2018). Appellant was found not guilty of one charge and specification of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2018). The military judge sentenced Appellant to eighteen months of confinement, reduction to the lowest enlisted grade, forfeiture of all pay and allowances, a reprimand, and a bad-conduct discharge. The United States Air Force Court of Criminal Appeals (AFCCA) affirmed the findings and sentence.

We granted review to consider "[w]hether it was error to rely on Appellant's incidental possession of two phones at the time of arrest as the basis to search the phones' contents going back more than eight months." *United States v. Johnson*, 86 M.J. 286 (C.A.A.F. 2025) (order granting review). For the reasons stated below, we answer the granted issue in the negative. Assuming without deciding that there was no probable cause, we hold the good faith exception applies. Accordingly, we affirm the decision of the AFCCA.

2

## I. Background

On August 12, 2022, Appellant drove his car onto Aviano Air Base (Aviano AB), Italy, where he was stationed. He parked his car at the Child Development Center (CDC), leaving behind his keys, wallet, and a gym bag, and entered a nearby temporary lodging facility (TLF).

DF, a civilian special agent with the Office of Special Investigations (OSI), was sleeping when he was awakened by a sensation of something touching his buttocks and later his foot. He kicked, turned on the light and found Appellant laying on the floor at the end of his bed. Appellant was dressed in black from head to toe, wearing a beanie, face mask, shirt, boxer briefs, and a pair of socks. His pants, shoes, and cell phone were on the floor nearby.

DF punched Appellant in the face several times and then detained him. As Appellant pleaded with DF not to call the police, DF walked him out of the room and yelled for help. Appellant tried to flee, but DF restrained him until help arrived.

When security forces arrived, they took custody of Appellant and secured the scene. Upon searching Appellant's person, they recovered an iPhone 13. Several hours later, OSI Special Agent (SA) AP searched DF's quarters and recovered an iPhone 7 belonging to Appellant from the floor next to the bed.

### A. The first search authorization

Later that day, SA AP sought authorization to search Appellant's cell phone[1] for geolocation data that could place Appellant at the crime scene at the relevant time. SA AP and a judge advocate from the legal office met with the commander of the 31st Medical Group, Aviano AB, Italy (commander), and SA AP told him under oath about Appellant's actions at the TLF and the cell phone[2] that was

---

[1] It is unclear from the record which iPhone SA AP sought to search.

[2] It is unclear from the record which iPhone was discussed.

discovered at the scene. After consulting with a judge advocate, the commander found probable cause to grant oral search authorization based on SA AP's representations that Appellant was apprehended at the scene after a physical altercation witnessed by others and that his cell phone was discovered in DF's room.[3]

Several days later, SA AP followed up the verbal request with a written affidavit and application to the same commander, requesting authorization to search both iPhones for geolocation data. Although it did not contain all of the details they had discussed on August 12, the affidavit described the August 12 incident, clarified that two iPhones were found, and stated that the judge advocate had opined there was probable cause to search both iPhones for geolocation data. On August 23, 2022, the commander signed the search authorization (the first search authorization).

### B. The second search authorization

On August 31, 2022, SA JA, a different OSI agent, provided the same commander with a sworn affidavit in support of a request for authorization to expand the search of the iPhones to include "all call logs, messages . . . sent and received, and media produced between 29 Dec 21 and 12 Aug 22 related to the violation of Article 120, UCMJ, Sexual Assault; Article 128, UCMJ, Assault; and Article 129, UCMJ, Burglary." The affidavit provided new details about the August 12 incident,[4] including the fact that Appellant left his keys, wallet, and a duffel bag full of civilian clothes in his unlocked, parked car; he had in his

---

[3] This was the first search authorization ever granted by this commander. Prior to granting the search authorization, he had received "one mandatory training for new commanders" consisting of "approximately 80 PowerPoint slides" which a judge advocate reviewed with the commander and then left with him for future reference.

[4] The affidavit did not include any information derived from the first search authorization because that search had not yet occurred.

possession only the clothes he was wearing and an iPhone when he was apprehended; and he left another iPhone on the floor of DF's room. SA JA deduced that by leaving clothes and other items in the car, Appellant "had sanitized himself" of possessions that could be traced to him, except for the iPhones. The fact that Appellant brought two iPhones into the TLF after leaving his other personal effects in his car suggested that he was using the phones during the commission of the charged offenses. SA JA had previously met with the base legal office and was advised by a judge advocate that the evidence supported probable cause for the expanded search.

In addition to the written affidavit, following SA JA's meeting with the base legal office, SA JA met with both the commander and a judge advocate to discuss the August 31 search authorization request. Because Appellant parked at the CDC and ended up at the TLF, SA JA deduced that "he may have gone to other locations" before going to the TLF. To support his assertion that Appellant was using the iPhones during the commission of the charged offense, SA JA provided the commander with his theory that Appellant captured images of individuals while they were sleeping.

SA JA also informed the commander about a similar, unsolved incident at Incirlik Air Base (Incirlik AB), Turkey, on December 29, 2021, when Appellant was stationed there. OSI had learned that a person dressed in black and matching Appellant's description was found crawling in a man's bedroom. When confronted, the intruder asked the man not to call the police before he fled.

The commander initially refused to authorize the search, citing "inaccuracies on the document." Once those were corrected, he signed the search authorization (the second search authorization). At trial, the commander testified that he found three facts highly relevant to his probable cause determination. First, the fact that Appellant brought two phones into the TLF led him to believe the phones were used during the commission of the offense. Second, the proximity of the car to the crime scene

made it more likely that Appellant was near the crime scene. Third, the Aviano incident "mirrored" the Incirlik incident, which occurred when Appellant was stationed at Incirlik AB.

The iPhone 13 was searched on September 7, 2022. The search revealed a "significant" number of photographs of DF's feet taken "around the same time" as the August 12 incident; photographs of feet of "dozens" of other unidentified individuals in various locations, including photos taken while they were sleeping; photographs of nude buttocks taken on February 27, 2022; and videos of a nude man showering in a locker room, taken on August 10, 2022. There was no geolocation data on the iPhone 13.[5]

### C. The third search authorization

On October 14, 2022, SA JA sought another search authorization, this time with no date-range limitation, from the same commander. The supporting affidavit referenced the videos and photos found in the previous search, and added "Indecent Viewing, Visual Recording, or Broadcasting" as a suspected offense. SA JA, prior to his meeting with the commander, consulted with a judge advocate who opined that probable cause existed for the expanded search. Following the meeting with the judge advocate, SA JA met with the commander and was sworn to the facts in his affidavit. The commander found probable cause and granted search authorization (the third search authorization). Appellant did not identify or challenge the admissibility of any evidence obtained as a result of the third search authorization.[6]

---

[5] The iPhone 7 was not unlocked and searched until January or February 2023. There was geolocation data on the iPhone 7, but not associated with any pictures or videos relevant to this case. Appellant does not identify or challenge the admission of any evidence discovered on the iPhone 7.

[6] Appellant's argument focuses on the second search authorization.

### D. Motion to suppress

Appellant was charged with abusive sexual contact, indecent visual recording, assault, and burglary, in violation of Articles 120, 120c, 128, and 129, UCMJ. Before trial, the defense moved to suppress all evidence derived from the searches of the iPhones[7] under Military Rule of Evidence (M.R.E.) 311(a), which generally makes "[e]vidence obtained as a result of an unlawful search or seizure . . . inadmissible against the accused." Appellant argued there was no probable cause to search the iPhones because there was no reason to believe they were used in the commission of any offense. In the alternative, he argued there was no probable cause to search for anything beyond geolocation data. Therefore, the evidence obtained in the search was inadmissible under M.R.E. 311(a) and there was no applicable exception to the exclusionary rule.

The military judge denied the motion, finding probable cause for the August 12 and August 31 search authorizations.[8] In the alternative, the military judge applied the good faith exception to the exclusionary rule under M.R.E. 311(c)(3).

Regarding the August 12 search authorization for geolocational data, the military judge concluded:

> Having reviewed [the commander's] probable cause determination, and granting [the commander] the required substantial deference, this court does not find this to be a close call. The court upholds [the commander's] probable cause determination on the first [verbal and written] search authorizations.

---

[7] The motion to suppress specifically identifies "cell phones," thus the iPhone 7 and iPhone 13 are the targets of the motion to suppress.

[8] As noted above, Appellant did not identify or challenge the admissibility of any evidence obtained as a result of the third search authorization. Therefore, the military judge did not specifically address the third search authorization, but instead addressed the first and second search authorizations.

The August 31 search authorization was a "closer call." The military judge noted that "the facts of the 12 August 2022 incident and the Incirlik incident do not provide facts sufficient to go rummaging about in [Appellant's] cell phones and thus would not support probable cause on their own." Nevertheless, he concluded, "[w]hat saves this evidence for the Government here is the facts about the car, its contents, and the fact [that Appellant] was carrying two phones—which [the commander] found particularly compelling," especially in light of the judge advocate's agreement that the totality of the circumstances supported probable cause to believe the iPhones were used in the commission of the charged offenses and could contain other relevant photographs or recordings. Therefore, "the execution in this case was legally sufficient, so even if an appellate court were to disagree with this court's decision on [the commander's] probable cause determination, the court could still apply the good faith basis in this case."

Finally, the military judge concluded that even if there was no probable cause and the good faith exception did not apply, exclusion of the evidence would not appreciably deter future unlawful searches and any such deterrent effect was outweighed by the costs to the system of excluding the evidence.

### E. The appeal

Appellant challenged the military judge's suppression ruling on appeal to the AFCCA. Addressing only the good faith exception, the AFCCA held "that even if the search authorization for evidence predating the TLF offense was lacking in probable cause, the good faith exception applies." *United States v. Johnson*, No. ACM 40537, 2025 CCA LEXIS 193, at *24, 2025 WL 1276579, at *7 (A.F. Ct. Crim. App. May 2, 2025) (unpublished). Accordingly, the AFCCA affirmed the findings and sentence. *Id.* at *1-2, 2025 WL 1276579, at *1.

We granted review to consider "[w]hether it was error to rely on appellant's incidental possession of two phones at the time of arrest as the basis [for the second search

authorization] to search the phones' contents going back more than eight months." *Johnson*, 86 M.J. at 286. Assuming without deciding that there was no probable cause, we hold the good faith exception applies. Accordingly, we affirm the decision of the AFCCA.

## II. Applicable Legal Principles

When reviewing a lower court's decision on a military judge's ruling, this Court " 'typically ha[s] pierced through that intermediate level and examined the military judge's ruling, then decided whether the Court of Criminal Appeals was right or wrong in its examination of the military judge's ruling.' " *United States v. Blackburn*, 80 M.J. 205, 211 (C.A.A.F. 2020) (quoting *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006)). "We review the military judge's ruling on a motion to suppress for abuse of discretion, considering the evidence in the light most favorable to the prevailing party." *United States v. Harborth*, 85 M.J. 469, 476 (C.A.A.F. 2025). An abuse of discretion occurs "when the 'military judge's findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.' " *Id.* (quoting *United States v. Shields*, 83 M.J. 226, 230 (C.A.A.F. 2023)).

A military judge reviewing a commander's decision to issue a search authorization must determine "whether the [commander] had a substantial basis for concluding that probable cause existed." *United States v. Rogers*, 67 M.J. 162, 164-65 (C.A.A.F. 2009). A substantial basis exists "when, based on the totality of the circumstances, a common-sense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found at the identified location." *Id.* at 165. The probable cause determination is "inherently contextual, dependent . . . upon the overall effect or weight of *all* factors presented to the [commander]." *United States v. Nieto*, 76 M.J. 101, 106 (C.A.A.F. 2017) (internal quotation

9

marks omitted) (quoting *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)).

"[I]f a [commander] has 'a substantial basis to find probable cause, a military judge [does] not abuse his discretion in denying a motion to suppress.'" *Id.* at 105 (third alteration in original) (citation omitted). However, if the commander does not have a substantial basis to find probable cause, the exclusionary rule ordinarily bars admission of evidence obtained as a result of the ensuing, unlawful seizure or search.[9] *Id.* at 106.

In *United States v. Leon*, the Supreme Court recognized a good faith exception to the exclusionary rule, holding that evidence obtained as a result of an unlawful search or seizure is nevertheless admissible if law enforcement officers reasonably relied on a search warrant issued by a

---

[9] The exclusionary rule is embodied in M.R.E. 311(a), which provides:

> Evidence obtained as a result of an unlawful search or seizure made by a person acting in a governmental capacity is inadmissible against the accused if:
>
> (1) [t]he accused makes a timely motion to suppress or an objection to the evidence under this rule;
>
> (2) the accused had a reasonable expectation of privacy in the person, place, or property searched; the accused had a legitimate interest in the property or evidence seized when challenging a seizure; or the accused would otherwise have grounds to object to the search or seizure under the Constitution of the United States as applied to members of the Armed Forces; and
>
> (3) exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system.

neutral and detached magistrate.[10] 468 U.S. 897, 922 (1984). The exception is grounded in the Supreme Court's "strong preference" for warrants, which "is most appropriately effectuated by according 'great deference' to a magistrate's determination" of probable cause. *Id.* at 914.

At the same time, the Court was unwilling to afford "boundless" deference to the magistrate. *Id.* Accordingly, the good faith exception does not apply in circumstances involving:

> (1) *False or reckless affidavit*—Where the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";
>
> (2) *Lack of judicial review*—Where the magistrate "wholly abandoned his judicial role" or was a mere rubber stamp for the police;
>
> (3) *Facially deficient affidavit*—Where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and
>
> (4) *Facially deficient warrant*—Where the warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

*United States v. Carter*, 54 M.J. 414, 419-20 (C.A.A.F. 2001) (citing *Leon*, 468 U.S. at 923).

In the military justice system, the good faith exception is embodied in M.R.E. 311(c)(3), which provides that evidence obtained as a result of an unlawful search or seizure is admissible if:

> (A) the search or seizure resulted from an authorization to search, seize, or apprehend

---

[10] In the military justice system, a commander serves a similar function to that of a federal civilian magistrate judge. *See* M.R.E. 315(d)(1) (authorizing a commander to grant search authorization of persons and premises under their control).

issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) . . .

(B) the individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause . . . ; and

(C) the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith is to be determined using an objective standard.

This Court has "construed M.R.E. 311(c)(3) in a manner consistent with the Supreme Court's decision in *Leon*," interpreting M.R.E. 311(c)(3)(B) to address the first and third *Leon* exceptions and interpreting M.R.E. 311(c)(3)(C) to address the second and fourth *Leon* exceptions. *United States v. Hernandez*, 81 M.J. 432, 440-41 (C.A.A.F. 2021) (citing *Carter*, 54 M.J. at 421).

### III. Discussion

Appellant argues the military judge abused his discretion in denying the motion to suppress because, in the absence of any evidence Appellant used his phones in the commission of an offense, there was no probable cause to search them for anything other than location data. Additionally, he argues there was no probable cause to expand the date range for the search to include the month leading up to the Aviano incident because there was insufficient evidence linking Appellant to the Incirlik incident—and in any event, Appellant argues that the commander did not rely on the Incirlik incident when he granted the second search authorization. Finally, Appellant argues the military judge made erroneous findings of fact and failed to consider other important facts in finding probable cause.

We need not decide whether there was probable cause for the second search authorization[11] because we conclude

---

[11] Appellant has not identified any evidence discovered or admitted as a result of the search pursuant to the third search

the good faith exception applies. *See Hernandez*, 81 M.J. at 442 (presuming without deciding that probable cause did not exist and holding the military judge did not abuse his discretion admitting evidence under the good faith exception to the exclusionary rule); *United States v. Perkins*, 78 M.J. 381, 386-87 (C.A.A.F. 2019) (assuming for purposes of appeal that there was no probable cause and holding the military judge did not abuse his discretion in denying a motion to suppress under the good faith exception).

## A. The good faith exception

Under the good faith exception, even if a search authorization is unsupported by probable cause, a military judge does not abuse his discretion in concluding the evidence obtained from the search is admissible where "(1) the seizure resulted from a search and seizure authorization issued, in relevant part, by a [commander]; (2) the [commander] had a substantial basis for determining probable cause existed; and (3) law enforcement reasonably and in good faith relied on the authorization." *Nieto*, 76 M.J. at 107 (citing M.R.E. 311(c)(3)). We conclude all three requirements of the good faith exception are satisfied in this case.

The parties do not dispute the first requirement of the good faith exception was satisfied: the search authorization was issued by "an individual competent to issue the authorization under Mil. R. Evid. 315(d)." M.R.E. 311(c)(3)(A). In his motion to suppress, Appellant conceded the commander was competent to issue the search authorization. The military judge agreed. Therefore, we see no reason to disturb the AFCCA's conclusion that the commander was competent to issue the search authorization at issue here.

---

authorization. Therefore, we do not address whether there was probable cause for the third search authorization.

The second requirement of the good faith exception is satisfied "if the [commander] authorizing the search had a substantial basis, in 'the eyes of a reasonable law enforcement official executing the search authorization,' for concluding that probable cause existed." *Perkins*, 78 M.J. at 387 (quoting *Carter*, 54 M.J. at 422, (citing M.R.E. 311(c)(3)(B))). In *Perkins*, we held that an OSI special agent who "received and apparently relied on the advice of appropriate government lawyers . . . had an objectively reasonable belief that [the search authority] had a substantial basis for determining the existence of probable cause." *Id.* at 388. Specifically, the agent reasonably could have concluded that when the search authority issued the authorization, he was confirming what government counsel had told the agent. *Id.*

In this case, as in *Perkins*, " 'the law enforcement official had an objectively reasonable belief that the [commander] had a "substantial basis" for determining the existence of probable cause.' " *Id.* at 386 (alterations in original removed) (quoting *Carter*, 54 M.J. at 422). The military judge found that SA JA "successfully provided sufficient facts to persuade [the judge advocate] and [the commander] that probable cause existed." The military judge's conclusion was based on his finding that the commander relied on information provided by SA JA in conversation and by affidavit, including: a description of the charged conduct; what Appellant was (and was not) wearing at the time; the fact Appellant brought two cell phones into the TLF but left his other personal effects behind in his car, which was parked near but not at the TLF; a description of the Incirlik allegations; and the fact that Appellant was stationed at Incirlik AB when that similar incident occurred. The military judge found that SA JA explained, in the affidavit or in conversation, his belief that Appellant used the cell phones in the commission of the charged conduct and may have engaged in similar misconduct on other occasions. And significantly, SA JA advised the commander that he had previously consulted with a judge advocate (who coincidentally was present for

this conversation) and agreed the evidence established probable cause. Under these circumstances, it was objectively reasonable for SA JA to believe the commander had a substantial basis for his probable cause determination.

Appellant argues that SA JA knowingly or recklessly misled the commander by claiming that an expanded search was necessary without an explanation as to why. While it is true that an "affidavit must not be intentionally or recklessly false, and it must be more than a bare bones recital of conclusions," *Hernandez*, 81 M.J. at 440-41 (citation modified), the affidavits in this case were supplemented by SA JA's discussions with the commander. SA JA testified that he told the commander about the Incirlik incident, which was the basis for the expanded date range, and the commander testified that he found the similarity of the Incirlik incident to the August 12 incident to be highly relevant to his probable cause determination. We conclude the military judge's finding that "it was clear that [the commander] had been briefed on it," even if he was unable to recall some of the details, was not clearly erroneous.

Turning to the third requirement for the good faith exception, we apply an objective standard to determine whether "the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant." M.R.E. 311(c)(3)(C). "The fact that a neutral [commander] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . or in objective good faith." *Hernandez*, 81 M.J. at 442 (citation modified). On the other hand, "law enforcement agents do not act in good faith if they know that the magistrate merely 'rubber stamped' their request, or when the warrant is facially defective." *Perkins*, 78 M.J. at 389 (citation modified).

Here, SA JA reasonably and in good faith relied on the commander's issuance of a search authorization based on

SA JA's representations as to the facts and the judge advocate's advice. SA JA testified to his belief, based on his understanding of the facts and his discussion with the judge advocate, that there was probable cause to search the phones. In his affidavit (supporting the second search authorization request), he explained, based on his understanding of the facts, his professional experience, his training, and his discussion with the judge advocate, that the second search authorization request was based on probable cause.[12]

"In the absence of an allegation that the [commander] abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926. The military judge in this case found "no evidence" the commander "wholly abandoned his judicial role and merely acted as a rubber stamp for OSI." To the contrary, the military judge found that agents sought legal advice before they sought search authorization, and a judge advocate was "available and consulted with [the commander] before he made his ultimate decisions." And, as noted above, the military judge

---

[12] The same is true for the forensic examiner, SA JB. The military judge found that after the first search authorization was granted but before the cell phones were searched, SA JA told SA JB that the search authorization would be expanded. A week later, SA JA obtained the second, expanded search authorization, which he provided to SA JB. The supporting affidavit stated, among other things, that SA JA had consulted with a judge advocate, who opined there was probable cause to expand the search as stated in the search authorization request. SA JB testified that it was his common practice to print out a search authorization and supporting affidavit so that he could refer to it during his search. The military judge's finding that he did so in this case is not clearly erroneous, and it supports the conclusion that SA JB reasonably believed the magistrate had a substantial basis for his probable cause determination.

found no evidence agents intentionally or recklessly provided false information to the commander. Once again, we conclude the findings are not clearly erroneous.

## B. The military judge did not abuse his discretion

The military judge did not abuse his discretion when he denied the suppression motion for the second search authorization and declined to apply the exclusionary rule to the evidence obtained as a result of the search of the iPhones.

First, the military judge's findings of fact were not clearly erroneous. The military judge's findings included the following: that the commander was a competent, neutral, and detached authority; there was no evidence the commander was provided with false information; and the commander was provided with sufficient facts to support his probable cause determination. As previously stated, the military judge's findings stemmed from sworn testimony and evidence described above. Thus, the findings are supported by the record and are not clearly erroneous.

Second, the military judge's decision was not influenced by an erroneous view of the law. The military judge's factual findings supported his legal conclusion that the good faith exception applied, and therefore, the exclusionary rule did not apply.

Finally, the military judge's ruling on the motion was not outside the range of choices reasonably arising from the facts of the case and the law. As stated previously, his findings of fact supported the application of the good faith exception, which in turn justified his denial of the motion to suppress. Assuming without deciding that there was no probable cause for the second search authorization, the military judge did not abuse his discretion by denying the motion to suppress.

## IV. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, dissenting.

In *United States v. Lattin*, I observed that "we are presented . . . with a classic and straightforward example of a blatantly unconstitutional fishing expedition" by a special agent of the Air Force Office of Special Investigations (OSI). 83 M.J. 192, 199 (C.A.A.F. 2023) (Ohlson, C.J., with whom Hardy, J., joined, dissenting). Three years later, here we are again.

The lead OSI agent in this case, Special Agent (SA) JA, had Appellant dead to rights for his involvement in a bizarre incident that occurred at Aviano Air Base, Italy, on August 12, 2022. But then SA JA made a speculative leap in logic and suspected that Appellant also might have been involved in an incident that occurred at Incirlik Air Base, Turkey, on December 29, 2021. Instead of confining the search of Appellant's phone to photos taken on August 12, 2022—or even stretching probable cause to the breaking point and also searching Appellant's phone for photos taken on December 29, 2021—SA JA sought and obtained from a commander a second search authorization for *virtually the entire contents* of Appellant's phone for the *entire* seven-and-a-half-month period between those two dates. Under these circumstances, the military judge should have suppressed the evidence gained from Appellant's phone during that illegal search. And yet, he did not.

The majority assumes without deciding that there was no probable cause to support the issuance of the search authorization. But then the majority chooses to uphold the search based on the good faith exception. *United States v. Johnson*, __ M.J. __, __ (12-13) (C.A.A.F. 2026). I cannot agree with the latter decision because in my view, the military judge clearly abused his discretion in applying that doctrine. Furthermore, I conclude that the military judge also abused his discretion when he determined in the alternative that the exclusionary rule should not be applied in this case.[1] Because the majority fails to hold OSI

---

[1] Unlike the majority, instead of merely assuming without deciding that there was no probable cause here, I would specifically find that there was a glaring lack of probable cause to support the issuance of the second search authorization. However,

accountable for perpetrating another unconstitutional search that violated the Fourth Amendment rights of a member of the United States Air Force, I must again respectfully dissent.

### The Good Faith Exception Should Not Apply Here

Under the circumstances of this case, there are two factors identified by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 923, 926 (1984), that result in the good faith exception being inapplicable here—(a) the search authorization was based on a facially deficient affidavit, and (b) Colonel (Col) JF, the commander who approved the search authorization, "wholly abandoned his judicial role." I will address each of these factors in turn.

First, the affidavit submitted by SA JA, even supplemented by his conversation with Col JF, is too deficient to justify the good faith exception. As the Supreme Court has held, the good faith exception is inapplicable when law enforcement relies on a warrant affidavit that is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" *Id.* at 923 (internal quotation marks omitted) (citation omitted); *see also United States v. Lopez*, 35 M.J 35, 42 (C.M.A. 1992). Here, SA JA's affidavit described at length the August 12, 2022, incident at Aviano Air Base but failed to even mention the December 29, 2021, incident at Incirlik Air Base. Although SA JA provided Appellant's commander with some information about that earlier incident orally, Col JF was provided with no information whatsoever that constitutionally justified searching Appellant's iPhones for approximately seven-and-a-half months of content. Thus, even though SA JA consulted with a judge advocate on the issue of probable cause, as Appellant correctly argues: "The affidavit [even as supplemented by information provided orally to Col JF] was entirely lacking in justification for the date range," and "[i]t was unreasonable for [the OSI agent who executed the search] to have carried out the search based on the affidavit

---

because of the approach taken by the majority, I too will focus on the good faith exception and then continue my analysis by considering the exclusionary rule.

[and supplemental information orally] provided." *See Leon*, 468 U.S. at 923.

Second, Col JF, who was Appellant's commander, abdicated his judicial role in this important process when he granted the second search authorization's broad date range despite the fact that there was no articulated or theoretically defensible basis for doing so. *See id.* (identifying another instance where the good faith exception is inapplicable as when "the issuing magistrate wholly abandoned his judicial role"); *United States v. Carter*, 54 M.J. 414, 419 (C.A.A.F. 2001) (stating that the good faith exception does not apply when the search authority "was a mere rubber stamp" for law enforcement). Simply stated, if Col JF had properly fulfilled his responsibilities, he would have necessarily recognized that there was nothing in the affidavit or in the supplemental information that supported the expansive, approximately seven-and-a-half-month date range of the second search authorization. Col JF's acquiescence to SA JA's request serves as an exemplar of a commander acting as a "rubber stamp." *See Leon*, 468 U.S. at 923; *Carter*, 54 M.J. at 419.

Because SA JA reasonably knew that the search authorization was facially deficient and reasonably knew that Col JF merely acted as a rubber stamp here, it was patently unreasonable for OSI agents to carry out this excessively broad search. *See Leon*, 468 U.S. at 922-23. Therefore, the military judge abused his discretion in finding that the good faith exception applied.

### The Exclusionary Rule Should Apply Here

Supreme Court precedent recognizes that competing principles come into play when deciding whether the exclusionary rule should be applied in a specific case. In essence, these principles can be distilled to two key factors articulated by the Court in *United States v. Davis*: (a) "When [law enforcement officers] exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights," or "the case involve[s] 'recurring or systemic negligence' on the part of law enforcement," "the deterrent value of exclusion is strong and tends to outweigh the resulting costs," but (b) "when [law

enforcement officers] act with an objectively 'reasonable good-faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the 'deterrence rationale loses much of its force.' " 564 U.S. 229, 238, 240 (2011) (citations omitted).

These two competing principles have been codified in Military Rule of Evidence (M.R.E.) 311(a)(3). The exclusionary rule should apply under two conditions: (1) when "exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures," *and* (2) when "the benefits of such deterrence outweigh the costs to the justice system." M.R.E. 311(a)(3). I will refer to these two conditions as the "appreciable deterrence test" and the "balancing test."

The military judge's conclusion that the application of the "appreciable deterrence test" and the "balancing test" did not support implementation of the exclusionary rule was clearly unreasonable and, hence, his disposition of the motion to suppress constituted an abuse of discretion.

Applying the appreciable deterrence test, SA JA was reckless or grossly negligent when he sought a search authorization that spanned the entire period of time between the two incidents at issue here.[2] It would be one thing if SA JA had simply sought to search Appellant's phones for pictures and videos that were generated on the actual dates of

---

[2] The majority notes that "SA JA had previously met with the base legal office and was advised by a judge advocate that the evidence supported probable cause for the expanded search." *Johnson*, __ M.J. at __ (5). However, in my view, the fact that a U.S. Air Force judge advocate provided such woefully incorrect advice to SA JA is more governmental gross negligence that would be deterred through the application of the exclusionary rule. *See Lattin*, 83 M.J. at 201-02 (Ohlson, C.J., with whom Hardy, J., joined, dissenting) ("[T]his deterrence principle would apply to all those involved in criminal investigations—to include judge advocates who, as in the instant case, may be presented with facially and conspicuously deficient language in a search authorization and must choose whether or not to fulfill their professional obligation to protect the rights of our servicemembers by simply saying, 'No. This material does not pass constitutional muster.' ").

the two incidents, December 29, 2021, and August 12, 2022, and it was determined in hindsight that probable cause was lacking to support the search of the phone for the Incirlik incident. But here, SA JA sought and obtained the search authorization for an extensive period—and for virtually the entire contents of the phone—that was facially overbroad and without any objectively reasonable rationale to support it. Thus, SA JA's actions can only be described as reckless or grossly negligent. Accordingly, the appreciable deterrence test weighs in favor of applying the exclusionary rule.

Although the appreciable deterrence aspect is obvious, the balancing test asks if this deterrence outweighs the price paid by the justice system. M.R.E. 311(a)(3). To be sure, Appellant's conviction for making an indecent recording of an unwitting male servicemember showering at the base gym would have been lost if the evidence had been suppressed. However, the military judge identified no other "cost to the justice system" and thus it must be noted that even if the exclusionary rule had been properly applied, Appellant still would stand convicted of unlawfully entering a civilian OSI agent's room and assaulting him. Thus, the "costs" here would not have outweighed the benefits of deterrence.

For these reasons, the military judge abused his discretion when he ruled in the alternative that the exclusionary rule should not be applied in this case. As such, the evidence generated from the search of Appellant's phones and all derivative evidence should have been suppressed. *See* M.R.E. 311(a); *United States v. Conklin*, 63 M.J. 333, 334 (C.A.A.F. 2006). Accordingly, the United States Air Force Court of Criminal Appeals' decision to the contrary should be reversed, as well as that part of the lower court's decision that affirmed Appellant's conviction for indecent recording and the accompanying sentence.

It is judicially *necessary* to penalize reckless or grossly negligent government behavior of this nature by excluding improperly obtained evidence from a court-martial. Otherwise, we should not be surprised if government investigators come to believe that there will be no negative consequences if they fail to comply with the rule of law.

I respectfully dissent.